UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| SONDRA J. HANSEN and WILLIAM R. | ) | |
| HANSEN, individually and on behalf of C.H., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:05-cv-670- LJM-WTL |
| BOARD OF TRUSTEES FOR HAMILTON | ) | |
| SOUTHEASTERN SCHOOL | ) | |
| CORPORATION, and DMITRI B. ALANO, | ) | |
| Defendants. | ) | |

## ORDER

This cause is before the Court on Defendant's, Board of Trustees for Hamilton Southeastern School Corporation ("the School"), Motion for Summary Judgment (Docket No. 93). Plaintiffs, Sondra J. Hansen and William R. Hansen (collectively, "the Hansens"), filed this lawsuit individually and on behalf of their daughter, C.H. The Hansens contend that defendant Dmitri B. Alano ("Alano") engaged in an improper sexual relationship with C.H., who was one of his students at Hamilton Southeastern High School ("HSE"). The Hansens bring two federal claims in this suit, one based on Title IX of the Education Amendments Act of 1972 (20 U.S.C. §§ 1681-1688) and the other based on 42 U.S.C. § 1983, as well as five state law claims against the School and Alano. The School contends that it is entitled to summary judgment on each of the Hansens' claims. The parties have fully briefed the issues and this matter is now ripe for ruling.

For the reasons explained herein, the School's motion is **GRANTED**.

# I. BACKGROUND

The relevant facts are not in dispute and are summarized as follows:

## A. THE SCHOOL'S POLICIES AND PROCEDURES

The School has a general "Nondiscrimination Equal Opportunity" Policy that provides that the school will not discriminate in its educational or employment activities on any basis prohibited by law. *See* Hogue Dep., Ex. B-13. The School also has a policy proscribing sexual harassment, and it prohibits employees from encouraging or engaging "in any thing other than a professional relationship with students." *See id.*, Exs. B-9 & B-11. The School provides regular sexual harassment training to its employees, which includes the procedures for reporting incidents of harassment, and it gives a handbook with the policies to students. *See id.* at 108-09, & Exs. B-15 through B-19; Hansen Dep. at 63, 160-61, & Ex. K. As an employee of the School, Alano received the required training on sexual harassment and acknowledges that he knew that inappropriate activity with students, including sexual relationship, was prohibited by the School's policies. *See* Alano Dep. at 44-47.

In addition to these policies, the School has policies and procedures that it uses to hire new employees. All applications for employment are sent to a central office where they are screened to ensure that references are verified and that criminal background and sexual offender checks are completed. *See* Hogue Dep. at 31, 37, 47, & Exs. B-1, B-5, B-7, B-8, & C. An interview team will interview the resultant pool of applicants and ultimately recommend a candidate for each vacancy to the central office. *See id.* at 37. The Assistant Superintendent for Personnel, Dr. Richard Hogue ("Dr. Hoge"), will then conduct a "final interview" of a prospective employee that emphasizes

2

methodology and, in cases of supervisors of extra-curricular activities such as coaches and band directors, tests an applicant's judgment on the boundaries of appropriate teacher and student conduct. *See* Hogue Dep. at 52-55, 58-59, 63, & Exs. B-6 & D.  If Dr. Hogue reaches a "comfort level" with an applicant, he passes on his hiring recommendation to the School Board, which ultimately makes the decision about hiring an applicant. *See id.* at 62-63.

## B. ALANO'S EMPLOYMENT HISTORY

Alano graduated from Butler University in 1987.  *See* Alano Dep. at 10.  Following his graduation, Alano served as the director of instrumental music for grades 5-12 and the band director at Waldron Jr./Sr. High School ("Waldron") for a number of years until 1998 when he applied for a position as assistant band director at HSE.  *See id.* at 13, 24.  Prior to his employment at HSE, Alano had worked as a volunteer for HSE's marching band during the summers of 1994 through 1998.  *See* Niemiec Dep. at 15.  After he was hired full-time, Alano served as assistant band director until January 29, 2004, when he was placed on suspension for his relationship with C.H.  *See* Alano Dep. at 163.

Like all applicants for a vacant position, Alano went through the application and hiring process at HSE.  In addition to the other application materials, Alano submitted a glowing reference letter from the principal at Waldron.  *See* Hogue Dep. at 50, & Ex. B-4.  Alano underwent an initial interview with HSE's principal, Glen Nelson ("Nelson"), who checked Alano's background.  *See* Alano Dep. at 33-34; Hogue Dep. at 49.  The central office also ensured that Alano's name did not appear on Indiana's sex offender registry and that he had a valid teaching license, which signified that Alano had passed a criminal background check.  *See* Hogue Dep. at 45, & Ex. B-5.  Further,

3

because HSE's band director had known Alano for ten years, both Nelson and Dr. Hogue spoke to the band director to see whether he had any reservations about hiring Alano. *See* Hogue Dep. at 49-51. Finally, Dr. Hogue interviewed Alano before recommending him to the School Board for its final approval. *See id.* at 54-55, 59, 63, & Exs. B-2, B-6, & D; Alano Dep. at 35. Alano's employment officially began on July 1, 1998. *See* Alano Dep. at 39.

## C.  ALLEGATIONS OF MISCONDUCT

C.H. was born on June 27, 1986, and attended HSE from 2000 to 2004. *See* Hansen Dep. at 8, 20. C.H. was enrolled in the band and contends that she and Alano had a number of sexual encounters during her freshman and sophomore years at HSE. *See* Compl., p.2, ¶ 1; Pls.' Ex. H; Hanesn Dep. at 59-61, 69, 82-84, 88-90, 92, 96-98, 106, 114, & Ex. C. C.H. did not report the incidents and actually undertook efforts to keep the information from both HSE officials and her parents. *See* Hansen Dep. at 66, 70, 114, 161-62, 165, 175, 187-88, 196. C.H. ultimately quit the band at the end of her sophomore year and had no further sexual encounters with Alano after that time. *See id.* at 110, 198.

Subsequently, C.H. was arrested for driving under the influence. *See id.* at 41-42. The Hansens had C.H. hospitalized in order to receive substance abuse treatment. *See id.* at 42. On January 19, 2004, during her stay at the hospital, C.H. admitted to a therapist that she had engaged in inappropriate sexual conduct with Alano. *See id.* at 158; School's Ex. J. The Hansens learned about the incidents the next day when the hospital reported the information to them. *See* Pls.' Ex. E. A criminal investigation ensued and led to a decision by the Hamilton County Prosecutor to file charges against Alano. *See* Baker Dep. at 32, 42-44, 48, 52, 55-56; Alano Dep. at 87-89, & Ex. 14;

4

Pls.' Exs. J, M-O.  Alano was placed on suspension and ultimately resigned as assistant band director after pleading guilty to a charge of sexual battery.  *See* Hogue Dep. at 128; Alano Dep. at 89-90, 93, 109, 163; Pls.' Exs. A-B.

In addition, during the course of the criminal proceeding, investigators learned that Alano had engaged in sexual intercourse with Alicia Rhoades ("Rhoades"), one of his former students from Waldron, after Rhoades had graduated.  *See* Pls.' Ex. P.  No one at either HSE or Waldron had known about this particular incident until after Alano's arrest.  *See* Alano Dep. at 118, 122-23; Niemiec Dep. at 121-22; Hogue Dep. at 126.  Moreover, the Hansens note that Alano's wife had also been one of Alano's former students at Waldron; however, both Alano and his wife deny that anything inappropriate took place while they were in a teacher-student relationship.  *See* Alano Dep. at 120-21; J. Alano Dep. at 27.

## II.  SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment is the "put up or shut up" moment in a lawsuit.  *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*.  Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that

there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment

must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

## III. <u>DISCUSSION</u>

### A. FEDERAL CLAIMS

As previously noted, the Hansens raise both a Title IX claim and a § 1983 claim against the School. As an initial matter, the § 1983 claim against the School must be dismissed because Title IX provides the exclusive remedy for the federal claims. *See Doe v. Smith*, 470 F.3d 331, 339 (7th Cir. 2006); *Boulahanis v. Bd. of Regents*, 198 F.3d 633, 640 (7th Cir. 1999). Accordingly, the Court now **DISMISSES** the § 1983 claims against the School **with prejudice**.[1]

Turning then to the Title IX claim, the Court notes that the Hansens do not challenge the School's assertion that they have no claim under Title IX in their individual capacities. The Court takes the Hansens' silence on this issue as a concession that they are only pursuing this claim on behalf of C.H. *See Witte v. Wisconsin Dep't of Corrs.*, 434 F.3d 1031, 1038 (7th Cir. 2006) (concluding that party forfeited his argument by failing to raise it in his brief in opposition to motion for summary judgment). Further, the plain language of the statute suggests that the Hansens themselves do not have any individual claim under Title IX. *See Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1010 n. 4 (5th Cir. 1996), *cert. denied*, 519 U.S. 861 (rejecting argument that

---

[1] Although the § 1983 claim against the School must be dismissed, the same claim against Alano remains. *See Delgado v. Stegall*, 367 F.3d 668, 675 (7th Cir. 2004) (finding that claim against professor in his individual capacity had to be reinstated).

parent had a separate cause of action under Title IX based on plain language of the statute).[2]
Therefore, any Title IX claim that the Hansens intend to assert on behalf of themselves is
**DISMISSED with prejudice**.

All that remains of the Hansens' federal claims is the Title IX claim that the Hansens have
raised on behalf of C.H.  However, the Court agrees with the School that this claim must likewise
be dismissed.  Under Title IX, an institution may be found liable for a teacher's sexual misbehavior
only where "an official of the school district who at a minimum has authority to institute corrective
measures on the district's behalf has *actual notice* of, and is deliberately indifferent to, the teacher's
misconduct."  *Gebser v. Lago Vista Indep. Sch. Dist*, 524 U.S. 274, 277 (1998) (emphasis added).
*See also Smith v. Metro. Sch. Dist. of Perry Twp.*, 128 F.3d 1014, 1034 (7th Cir. 1997), *reh'g and
reh'g en banc denied*; *Delgado*, 367 F.3d at 672.

Here, none of the officials at the School had actual knowledge of Alano's inappropriate
activities with C.H.  *See* Hogue Dep. at 128-32; Niemiec Dep. at 55-56.  Indeed, C.H. tried to keep
the information a secret.  *See* Hansen Dep. at 66, 70, 114, 161-62, 165, 175, 187-88, 196.  The
Hansens nonetheless contend that the School should have known or suspected that something was
wrong based on Alano's prior activity with Rhoades and his marriage to a former student.  However,
it is undisputed that no one knew about the encounter that Alano had with Rhoades until after
Alano's arrest when Rhoades finally reported the incident.  *See* Alano Dep. at 118, 122-23; Niemiec
Dep. at 121-22; Hogue Dep. at 126.  Moreover, there is no evidence that Alano had any sexual

---

[2]  Although not relevant to this case, the Court notes that the decision in *Rowinsky*
regarding a school's liability under Title IX for student-student activity was ultimately abrogated
by the Supreme Court's decision in *Davis v. Monroe County Board of Education*, 526 U.S. 629
(1999).

encounters with his wife at the time that she was his student.  In fact, Alano's wife testified that their relationship began after she had graduated from high school, and both Alanos deny that anything inappropriate took place while they were in a teacher-student relationship.  *See* Alano Dep. at 120-21; J. Alano Dep. at 27.   In short, the Hansens' reliance on the Rhoades incident and Alano's marriage fall short of creating a genuine issue of material fact that the School had actual knowledge of misconduct and was deliberately indifferent to it.  Accordingly, the School is entitled to summary judgment on the Title IX claim and that claim is **DISMISSED with prejudice**.

## B.  STATE LAW CLAIMS

The Hansens present five state law claims against the School, which may be summarized as follows: (1) negligent hiring, retention, and supervision of Alano (Count II); (2) assault and battery (Count IV); (3) negligence (Count V); (4) intentional infliction of emotional distress (Count VI); and (5) negligent infliction of emotional distress (Count VII).   The Hansens apparently do not dispute that their individual claims are derivative of any claim by C.H.   Indeed, such is the case under Indiana law.  *See, e.g.*, *Jordan v. Deery*, 609 N.E.2d 1104, 1108 (Ind. 1993);  *Ind. Patient's Comp. Fund v. Winkle*, 863 N.E.2d 1, 6 (Ind. Ct. App. 2007); *Elkhart Cmty. Schs. v. Yoder*, 696 N.E.2d 409, 416 (Ind. Ct. App. 1998).  Because the Hansens' individual claims are derivative in nature, they depend on the viability of C.H.'s claims.  Therefore, the Court first considers the viability of the state law claims that have been asserted on behalf of C.H. before addressing her parents' claims.

## 1. <u>Negligent Hiring, Retention, and Supervision</u>

It is undisputed that the negligent hiring, retention, and supervision claim requires the Hansens to demonstrate that the School knew that Alano had a habit of misconduct. *See, e.g.*, *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994). As previously discussed in the context of the Hansens' Title IX claim, there is no evidence that the School had actual knowledge that Alano had engaged in inappropriate conduct with C.H. or any of his prior students. *See* Hogue Dep. at 126, 128-32; Niemiec Dep. at 55-56, 121-22; Alano Dep. at 18, 120-23; J. Alano Dep. at 27. In fact, C.H. kept the information to herself and did not want the School or her parents to learn about the incidents. *See* Hansen Dep. at 66, 70, 114, 161-62, 165, 175, 187-88, 196.

Moreover, not only did the School receive a glowing written recommendation for Alano from the assistant principal at Waldron, but the School performed a background and criminal records checks on Alano, conducted personal interviews of him, and contacted his references. *See* Hogue Dep. at 45, 49-51, 54-55, 59, 63, & Exs. B-2, B-4, B-5, B-6, & D; Alano Dep. at 33-35. The School received no information or evidence that Alano had a prior history of molesting any of his students at school. Indeed, the Hansens' references to the Rhoades affair and the fact that Alano's wife was a former student fall short of demonstrating a history of molestation because the Rhoades affair took place after Rhoades had graduated and Alano's wife insists that nothing inappropriate occurred while she and Alano were in a teacher-student relationship. *See* Pls.' Ex. P; J. Alano Dep. at 27. In essence then, there is no basis in this case for holding the School liable for hiring, retaining, and supervising Alano. *See, e.g.*, *Chivers v. Cent. Noble Cmty. Schs.*, 423 F. Supp. 2d 835, 857 (N.D.

10

Ind. 2006) (dismissing claim of negligent retention and supervision where teacher's conduct was not foreseeable).

As a fallback argument, the Hansens assert that the School should nonetheless be liable based on the doctrine of *respondeat superior*. The Court is not persuaded by this argument. Under this doctrine, "an employer is liable for the acts of its employees which were committed within the course and scope of their employment." *Konkle v. Henson*, 672 N.E.2d 450, 456 (Ind. Ct. App. 1996) (citations omitted). An employee acts within the scope of this employment when he is acting, at least in part, to further the interests of his employer. *See id.* Liability will accrue even if an employee is primarily motivated by self-serving interests so long as the employee was at least partially serving his employer's interests. *See id.* at 456-57. However, an act is not within the scope of employment simply because it could not have occurred without access to the employer's facilities. *See id.* at 457.

The key issue then is whether Alano was acting within the scope of his employment, *i.e.*, if he was furthering the School's interests, at the time of his inappropriate conduct with C.H. Unfortunately, the Hansens' pleadings do not assist in resolving this dispute. Although the Count for negligent hiring, retention, and supervision is not as detailed on *respondeat superior* as some of the other Counts, a review of those other Counts reveals that the Hansens have plead that Alano's actions were both within the scope of his employment and outside the scope of his employment. *See* Compl., Count IV ¶¶ 6, 9; Count V ¶¶ 3, 6; Count VI ¶¶ 4, 6; Count VII ¶¶ 4, 6. Compounding the problem is the fact that C.H. has testified that she intends to pursue Alano individually for his actions, which is evidenced by the Hansens' opposition to Alano's motion for partial summary judgment, and the fact that the Hansens's response in opposition to the School's motion for summary

11

judgment does not address the tension created by the manner of pleading.  *See* Hansen Dep. at 195-96; Resp. in Opp. to Mot. for Summ. J. at 44-55; Resp. in Opp. to Alano's Mot. for Partial Summ. J. at 1-4.  This dual pleading against both the School and Alano personally for the same actions is inconsistent with Indiana law that a plaintiff may not sue both a government employee in a personal capacity and the governmental entity for acts committed within the scope of employment.  *See Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003).  Relying on *Bushong*, a number of courts have noted that such dual pleading is improper.  *See, e.g.*, *Gary v. Conat*, 810 N.E.2d 1112, 1118 (Ind. Ct. App. 2004); *Mayes v. City of Hammond*, 442 F. Supp. 2d 587, 629 (N.D. Ind. 2006); *Meng v. I.U. Bd. of Trustees*, No. 1:06-cv-1550-DFH-WTL, 2007 WL 1877980, at * 4 (S.D. Ind. June 27, 2007).

Notwithstanding the Hansens' inconsistent pleadings, the Court concludes that Alano was not acting within the scope of his employment during the times that he molested C.H. because he was not furthering the School's interests at that time.  Alano has admitted as much in his deposition testimony.  *See* Alano Dep. at 141-42.

Moreover, the Court concludes that the circumstances of this case are similar to those in *Konkle* and *Doe v. Lafayette School Corp.*, 846 N.E.2d 691 (Ind. Ct. App. 2006), *reh'g denied*.[3]  In *Konkle*, a minister molested a young parishioner at church on multiple occasions in contravention of a stated policy that sexual deviance was grounds for dismissal, and even made the parishioner hold a Bible during one of the encounters.  The Indiana Court of Appeals concluded that the church defendants were not liable on a theory of *respondeat superior* because there was no evidence that

---

[3]  *Doe* has since been abrogated on other grounds.  *See State Farm Mut. Auto. Ins. Co. v. Jakupo*, 856 N.E.2d 778, 782 & n. 2 (Ind. Ct. App. 2006) (reiterating that negligent infliction of emotional distress is an independent tort under Indiana law).

the minister was engaged in authorized acts when he molested the parishioner.  *See Konkle*, 672 N.E.2d at 457.

In *Doe*, the Indiana Court of Appeals similarly upheld the grant of summary judgment in favor of the school on the issue of *respondeat superior*.  *Doe*, 846 N.E.2d at 702.  There, the court was unpersuaded that the school should be held vicariously liable for the inappropriate sexual acts of the teacher simply because the teacher used school equipment and facilities to initiate his relationship with the student.  *See id.*  Like Alano, the perpetrators in both of these cases were motivated entirely by their own self-interests and were not acting to provide or further any service to their employers.

In contrast, the circumstances of this case are distinct from the circumstances in both *Stropes v. Heritage House Childrens Center of Shelbyville, Inc.*, 547 N.E.2d 244 (Ind. 1989), *reh'g denied*, and *Southport Little League v. Vaughan*, 734 N.E.2d 261 (Ind. Ct. App. 2000), where there was a basis for denying summary judgment.  In *Stropes*, a nurse's aide sexually assaulted a child resident who was suffering from cerebral palsy and severe mental retardation.  He began and ended the episode by performing fully authorized acts, specifically, changing the boy's bedding and clothing. The aide was also authorized to undress the boy for bathing.  The Indiana Supreme Court concluded that a genuine issue existed about whether the aide was, at least for a time, furthering his employer's interests or whether his actions were so divorced in time, place, and purpose from his authorized duties.  *See Stropes*, 547 N.E.2d at 250.

Likewise, a similar factual issue existed in *Southport Little League* where a volunteer, authorized to help size children's baseball uniforms, sexually molested some of the children. Therefore, the Indiana Court of Appeals upheld the denial of summary judgment.  *See Southport*

13

*Little League*, 734 N.E.2d at 270.  *See also Interim Healthcare of Fort Wayne, Inc. v. Moyer*, 746 N.E.2d 429, 433 (Ind. Ct. App. 2001), *reh'g denied* (upholding denial of summary judgment where there was a question about whether aide's alleged act of injecting patient with insulin was committed within the midst of her otherwise authorized duties).

Unlike the situation in *Stropes* and *Southport Little League*, the Hansens have failed to present evidence that would raise a genuine issue of material fact about whether Alano's actions were committed within the midst of his authorized activities.  Instead, they rely on the fact that Alano was C.H.'s teacher and that the encounters occurred at school.  Like the *Doe* court, the Court concludes that something more than use of school facilities is necessary to make the School vicariously liable.  To impose liability simply on the basis that the perpetrator is a teacher and that the sexual encounters occurred on school grounds would make the school strictly liable.  This would be directly contrary to the notion that schools are not insurers of the safety of children and are not strictly liable for injuries.  *See Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 974 (Ind. 2001).  It also would be contrary to the rule that an act is not within the scope of employment simply because it could not have occurred without access to the employer's facilities. *See Konkle*, 672 N.E.2d at 457.  The Court concludes that Alano's actions were not furthering the School's interests and, consequently, were not within the scope of his employment; therefore, the School is not vicariously liable for Alano's actions.

In light of the foregoing, the negligent hiring, supervision, and retention claim is **DISMISSED with prejudice.**

14

## 2.  <u>Remaining State Law Claims</u>

All of the remaining claims against the School are premised on the doctrine of *respondeat*
*superior*.  As already discussed, that doctrine is inapplicable due to the circumstances of this case.
Alano was not acting within the scope of his employment or furthering the School's interests when
he engaged in inappropriate sexual activity with C.H.  Therefore, all of C.H.'s remaining state law
claims against the School are **DISMISSED with prejudice**.

## 3.  <u>Parents' Claims</u>

As noted, the Hansens' claims are derivative of C.H.'s claims.  Because C.H.'s claims against
the School do not survive summary judgment, the claims of the parents also must fail.  *See*, *e.g.*,
*Durham ex rel. Estate of Wade v. U-Haul Intern.*, 745 N.E.2d 755, 764 (Ind. 2001) (noting that if
a spouse's cause of action for personal injury fails, a derivative claim for loss of consortium also
fails); *Bd. of Comm'rs of Cass County v. Nevitt*, 448 N.E.2d 333, 341 (Ind. Ct. App. 1983) (noting
that derivative claim of loss of consortium is barred where an injured spouse's claims is completely
invalid).  Accordingly, the parents' claims against the School are **DISMISSED with prejudice**.[4]

## C.  IMPACT ON OTHER PENDING MOTIONS

As a final matter, the Court notes that the decision on the School's motion for summary
judgment renders it unnecessary to address two other pending motions, specifically,  the Hansens'

---

[4] Because the Court is dismissing both the parents' claims and C.H.'s claims for the
reasons stated herein, there is no reason to address the School's other arguments related to its
affirmative defenses, *i.e.*, the arguments related to the tort claims notice, statute of limitations,
contributory negligence, and incurred risk.

Motion for Partial Summary Judgment (Docket No. 86) and the School's Motion to Certify Question (Docket No. 110).[5]  Accordingly, those motions are now **DENIED as MOOT**.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's, Board of Trustees for Hamilton Southeastern School Corporation, Motion for Summary Judgment (Docket No. 93) is **GRANTED**, and the claims against said Defendant are **DISMISSED with prejudice**.

In addition, Plaintiffs Sondra J. Hansen and William R. Hansen's Motion for Partial Summary Judgment (Docket No. 86) and Defendant Board of Trustees for Hamilton Southeastern School Corporation's Motion to Certify Question (Docket No. 110) are both **DENIED as MOOT**.

IT IS SO ORDERED this 19th day of October, 2007.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Timothy Francis Devereux
HENLSEY & ASSOCIATES
tdevereux@hensleylegal.com

Sarah Jane Graziano
HENSLEY LEGAL GROUP
sgraziano@hensleylegal.com

John David Hensley
HENSLEY & ASSOCIATES
jhensley@hensleylegal.com

Laurel S. Judkins
LOCKE REYNOLDS LLP
ljudkins@locke.com

William Edwin Wendling Jr.
CAMPBELL KYLE PROFFITT LLP
wwendling@ckplaw.com

Thomas E. Wheeler II
LOCKE REYNOLDS LLP
twheeler@locke.com

---

[5]  The only other  motion pending at this time is Alano's Motion for Partial Summary Judgment (Docket No. 104), which the Court intends to address by separate order.

16